Littleton, Judge,
delivered the opinion of the court:
Plaintiff claims that the defendant, through the actions, rulings, and requirements of its Quartermaster and the action of the contracting officer in terminating the contract, breached the contract by unreasonable, arbitrary, grossly erroneous, and unauthorized rulings and requirements which plaintiff alleges caused it extra costs and damages in the amount of $22,348.91. This amount added to the amount of $15,580.84 due plaintiff under the contract at the time it ceased work thereunder on November 12, 1934, and for which the defendant has given plaintiff credit in its counterclaim for $22,525.56, totals $37,929.75.
Plaintiff’s bid for construction of the seven buildings for Army Officers’ Quarters at Fort Monmouth, New Jersey, under and in accordance with certain specifications and the provisions of the standard form of contract for such construction, upon the basis of which the bid wTas submitted, was accepted by the defendant November 27, 1933, and the contract, embodying the specifications as a part thereof, was executed December 4, 1933. The contract price was $126,195. In its bid plaintiff proposed to commence work within ten days after receipt of notice to proceed, and to complete the same within 220 calendar days thereafter. The contract, when executed, specifically provided that plaintiff was to commence the work December 28, 1933, and complete the same August 5, 1934. As set forth in finding 1, the period for completion was extended a total of 117 days, or to November 30, 1934. Due to unusually severe weather, an extra work order and under two change orders, A and B, the contract price was increased to $127,750.62. Plaintiff did not complete the work called for by the contract but ceased the work thereunder on November 12, 1934, and by letter dated December 3, 1934, received by the defendant on the following day, notified the defendant that it had abandoned and given up the contract, and that it was refusing to *636 proceed further thereunder on the asserted ground that the defendant had breached the contract by letter to plaintiff from the contracting officer on November 14, 1934, “as well as other breaches, changes, and extra work.”
The facts established by the record with reference to plaintiff’s failure and refusal to proceed with the work and the termination by the contracting officer of the contract in accordance with the provisions thereof, are set forth in findings 3 to 6, inclusive. Under these findings it is clear that the defendant did not breach the contract with reference to its wage rulings under Arts. 15, 18, and 22 of the contract (finding 3) or in terminating the contract under Art. 9 by reason of the failure and refusal of the plaintiff to proceed with the work as requested. On the contrary, it seems clear that plaintiff breached the contract by reason of its failure and refusal, as found by the Constructing" Quartermaster and the contracting officer, to comply with the wage provisions of Arts. 18 and 22 of the contract. The decision of the contracting officer was not arbitrary or unreasonable. Plaintiff did not appeal to the head of the department under Art. 15 of the contract and no official of the defendant in any way interfered with or impeded plaintiff in its right to do so.
After plaintiff had abandoned the work and its right to proceed further under the contract had been terminated by the contracting officer, as of December 4, 1934, the defendant readvertised for proposals for completion of the work under the contract after plaintiff’s surety had elected not to complete the contract. Another contract for the in-completed portion of the work was made, and such work was completed on September 12, 1935, at a cost of $49,912, or $8,860.93 in excess of plaintiff’s amended contract price. The defendant proceeded with all reasonable and proper dispatch under the circumstances in completing the work called for by plaintiff’s contract, but the same was not completed until 286 days after November 30, 1934, the date proposed by plaintiff and as provided in its contract as extended. By reason of plaintiff’s breach of the contract and its failure and refusal to proceed with and complete the work called *637 for thereby, the defendant sustained actual excess costs and damages, after allowing plaintiff credit for all sums due it under the contract at the time it ceased work thereunder, in the net amount of $22,525.66, as set forth in findings 6, 8, and 9. For this excess cost of completion and the actual damages for delay, the defendant is entitled to judgment on its counterclaim for $22,525.56.
The remaining items of plaintiff’s claims for alleged extra work and damages are set forth in findings 10,11, and 12, and the facts and circumstances with reference to each of the eleven separate items are set forth in detail in findings 10, 11,18-21, inclusive. It is not necessary to discuss the facts in detail here. It is sufficient to say that plaintiff’s proof fails to establish that the defendant’s Constructing Quartermaster acted unreasonably, arbitrarily, or capriciously in any instance or that any of his instructions, rulings, or requirements were grossly erroneous or exceeded his authority under the contract and specifications. Plaintiff did not protest the instructions, rulings, and decisions of the Constructing Quartermaster to the contracting officer under the applicable provisions of the contract and specifications (Arts. 3, 4, and 15) and plaintiff did not in any instance appeal to the head of the department, as provided in Art. 15, with reference to any action, ruling, or decision of the Constructing Quartermaster or the contracting officer. (See findings 22 and 23.) No officer of defendant obstructed or hindered plaintiff in' any instance or in any way in the matter of protests or appeals.
Upon the facts set forth in findings 10, 11, and 13-23, inclusive, and for the reasons above stated, plaintiff is not entitled to recover on any of the items of its claim. Plaintiff’s petition is therefore dismissed and judgment is rendered in favor of the defendant on its amended counterclaim for $22,525.56. It is so ordered.
MaddeN,' Judge; Jokes, Judge; Whitaker, Judge; and Whaley, Chief Justice, concur.